UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FRANCISCO JIMENEZ, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> JO ANNE B. BARNHART, ) <br> COMMISSIONER OF SOCIAL ) <br> SECURITY ADMINISTRATION, ) <br> ) <br> Defendant. ) <br> ) | No. CV 05-54-PLA <br><br> **MEMORANDUM OPINION AND ORDER** |

**I.**

**PROCEEDINGS**

Plaintiff filed this action on January 4, 2005, seeking review of the Commissioner's denial of his applications for Disability Insurance Benefits and Supplemental Security Income payments. The parties filed a Consent to proceed before the undersigned Magistrate Judge on February 18, 2005. Pursuant to the Court's Order, the parties filed a Joint Stipulation on January 30, 2006, that addresses their positions concerning the disputed issues in the case. The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## **BACKGROUND**

Plaintiff was born on March 24, 1945. [Administrative Record ("AR") at 30, 42, 271.] He obtained a sixth grade education in Mexico. [AR at 31.] His past relevant work experience includes positions as an aluminum cutter and crane operator. [AR at 32.]

On January 19, 1996, and January 31, 1996, plaintiff filed applications for, respectively, Supplemental Security Income payments and Disability Insurance Benefits, in which he alleged that he had been unable to work since January 27, 1994,[1] due to, among other things, back and knee injuries. [AR at 42-48, 256.] After his applications were denied initially and on reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). A hearing was held on September 4, 1997, at which time plaintiff appeared with counsel and testified on his own behalf through an interpreter. [AR at 27-41.] On November 20, 1997, the ALJ found that plaintiff was not disabled. [AR at 11-15.] After the Appeals Council denied plaintiff's request for review, plaintiff filed suit in federal court. The Court issued a Stipulation for Remand on February 17, 2000, and the Appeals Council remanded the case to the ALJ on March 22, 2000. [AR at 289-93.] A second hearing was held on August 7, 2001, at which plaintiff again testified through an interpreter. A vocational expert also testified. [AR at 268-88.] The ALJ issued a decision on September 28, 2001, making the following findings: (1) for the time period prior to plaintiff's 55th birthday (i.e., before March 24, 2000), plaintiff retained the ability to perform a limited range of light work[2] and therefore was not disabled; and (2) as of plaintiff's 55th birthday, based on his exertional capacity, education, age, and work experience, a finding of disabled is directed by Medical-Vocational Rule 202.02. [AR at 256-67.] When the Appeals Council denied

---

[1] At the August 7, 2001, hearing, the onset date was amended to March 24, 1995. [AR at 272.]

[2] Light work is defined as work that involves "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. §§ 404.1567(b), 416.967(b).

2

review on November 26, 2004, the ALJ's decision became the final decision of the Commissioner. [AR at 244-47.]

## III.

## **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards. Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257. When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is susceptible to more than one rational interpretation, the Court must defer to the decision of the Commissioner. Moncada, 60 F.3d at 523; Andrews v. Shalala, 53 F.3d 1035, 1040-41 (9th Cir. 1995); Drouin, 966 F.2d at 1258.

## IV.

## **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months. 42 U.S.C. § 423(d)(1)(A); Drouin, 966 F.2d at 1257.

/
/
/

A.     THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995, as amended April 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied. Id. If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied. Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. Id. If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied. Id. The claimant has the burden of proving that he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets this burden, a prima facie case of disability is established. The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy. The determination of this issue comprises the fifth and final step in the sequential analysis. 20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

B.     THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS

In this case, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset of disability. [AR at 258, 265.] At step two, the ALJ concluded that plaintiff's impairments -- degenerative arthritis in the neck and lower back, and knee pain -- are severe. [AR

at 260, 265.] The ALJ found at step three that the impairments do not meet or equal any impairments in the Listing. [Id.] The ALJ further determined that plaintiff is able to perform less than a full range of light work with certain restrictions.[3] [AR at 261, 265.] At step four, the ALJ concluded that plaintiff is unable to perform his past relevant work. [AR at 262, 264-65.] At step five, the ALJ determined that for the time period prior to plaintiff's 55th birthday, he was capable of performing a significant but less than full range of light work, that there were a significant number of jobs in the national economy that plaintiff could perform, and accordingly that plaintiff was not disabled. [AR at 262-66.] The ALJ further determined that as of plaintiff's 55th birthday, Medical-Vocational Rule 202.02 directs a finding of disabled. [AR at 264.]

V.

**THE ALJ'S DECISION**

Plaintiff contends the following: (1) the ALJ failed in carrying the Administration's burden at step 5 of the sequential analysis with respect to the time period prior to March 24, 2000; (2) the ALJ failed to properly evaluate plaintiff's dominant right upper extremity limitations; and (3) the ALJ failed to properly evaluate plaintiff's subjective complaints of pain. See Joint Stipulation ("Joint Stip.") at 3. For the reasons explained below, the Court concludes that remand is warranted.

**THE ALJ ERRED BY NOT PROPERLY CONSIDERING PLAINTIFF'S UPPER EXTREMITY LIMITATION SET FORTH BY THE EXAMINING PHYSICIAN**

Plaintiff asserts that the ALJ erred by offering "no rationale [for] rejecting or any discussion of the uncontroverted findings of reduced right grip strength" or the limitation involving his ability to reach with his upper extremity. See Joint Stip. at 10-11.

---

[3] The ALJ concluded that plaintiff can communicate in English, can lift and carry twenty pounds occasionally and ten pounds frequently, and can stand and walk for a total of four hours in an eight hour day. In addition, plaintiff should have a sit/stand option and can occasionally stoop, crawl, bend at the knee, crouch and walk on uneven surfaces. [AR at 261, 265.]

5

The evidence relevant to plaintiff's contention shows that on May 11, 1995, plaintiff was examined by an Agreed Medical Examiner, Dr. Alexander Angerman.[4] [AR at 143-81.] The related report shows that plaintiff's right hand grip strength was recorded as weaker than his left hand. [AR at 150, 175.] Dr. Angerman, however, set forth no limitations with respect to plaintiff's upper extremities. Several years later, on December 1, 1998, plaintiff was treated at the Roybal Comprehensive Health Center. The related treating note indicates that his right hand motor strength was weaker than his left. [AR at 329.]

On September 14, 2000, plaintiff underwent an orthopedic evaluation by examining physician, Dr. Harlan Bleecker. [AR at 336-40.] With respect to his upper extremities, Dr. Bleecker found that plaintiff has "difficulty abducting and forward flexing [his] right shoulder." [AR at 338.] Plaintiff's grip strength was stronger in his left hand than his dominant right hand. [AR at 338.] Dr. Bleecker set forth the following functional assessment: plaintiff cannot kneel, bend, squat, or stoop; can occasionally lift twenty-five pounds and frequently lift ten pounds; can sit for six out of eight hours; and can stand and walk two to four hours out of eight hours. Dr. Bleecker further opined that plaintiff "would have difficulty reaching with his right upper extremity." [AR at 340, 343.]

During the hearing, the vocational expert ("VE") was questioned regarding available jobs for plaintiff. The ALJ posed a hypothetical involving an individual who was able to lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for a total of four hours with a sit/stand option; and only occasionally stoop, crawl, bend at the knee, crouch and walk on uneven surfaces. [AR at 278-79.] The VE responded that the individual could work as a cashier and as an assembler of small products, both of which involve reaching, handling, and fingering. [AR 279-80.]

The ALJ posed another hypothetical which added, inter alia, a limitation allowing for only occasional reaching, pushing and pulling with the upper right extremity. [AR at 280-81.] The VE responded that only a position as a bakery worker in a conveyor line would be appropriate. [AR

---

[4] This examination was conducted for workers' compensation purposes.

6

1  at 281.] When the ALJ added the additional limitation of no reaching that involved abducting and forward flexing the right shoulder, the VE indicated that the bakery position was precluded, and that no other light positions were available. [AR at 281-82.]

In the hearing decision, the ALJ made note of Dr. Bleecker's assessment, including the limitation on reaching with the right upper extremity. [AR at 259-60.] In formulating the Residual Functional Capacity ("RFC"),[5] however, the ALJ relied upon the findings of the Agreed Medical Examiner in determining that plaintiff retained the ability to perform less than the full range of light work.  In particular, the ALJ set forth the following limitations: can lift and carry twenty pounds occasionally and ten pounds frequently; can stand and walk for a total of four hours with a sit/stand option; and can occasionally stoop, crawl, bend at the knee, crouch and walk on uneven surfaces. [AR at 261.]  He further concluded that until plaintiff reached the age of 55 on March 24, 2000, he was capable of performing work that existed in significant numbers in the national economy. [AR at 263.] After that time, however, he is disabled pursuant to Medical-Vocational Rule 202.02. [AR at 264.]

Based on the record, it does not appear that Dr. Bleecker's assessment that plaintiff has an upper right extremity limitation is expressly contradicted by any other medical source.  "The ALJ may reject an *uncontroverted* opinion of an [examining] physician only for clear and convincing reasons." Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (emphasis in original); see also Pitzer v. Sullivan, 908 F.2d 502, 506 (9th Cir. 1990).  Although the ALJ noted Dr. Bleecker's opinion regarding the upper extremity limitation, he articulated no reason for ultimately excluding that limitation from the RFC.  The ALJ's failure to include the restriction resulted in an implicit rejection of that portion of Dr. Bleecker's opinion.[6]  See, e.g., Smith v.

---

[5]   Residual functional capacity is what a claimant can still do despite existing exertional and nonexertional limitations.  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

[6]   Alternatively, because Dr. Angerman's assessment did not include the upper right extremity limitation, it could be considered an opposing finding.  In that event, the ALJ needed to set forth specific and legitimate reasons based on substantial evidence from the record to support the rejection of Dr. Bleecker's opinion in favor of that of Dr. Angerman.  See Nelsen v. Barnhart, 2003 WL 297738, **2-3 (N.D.Cal. Feb. 4, 2003) (rejection of controverted physician's opinion must be

1    Massanari, 139 F.Supp.2d 1128, 1133 (C.D.Cal. 2001) (reliance on one physician's opinion in
2    making a finding, which differs from that of another physician, is an implicit rejection of the latter);
3    Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981) ("Since it is apparent that the ALJ cannot
4    reject evidence for no reason or for the wrong reason [citation omitted], an explanation from the
5    ALJ of the reason why probative evidence has been rejected is required so that a reviewing court
6    can determine whether the reasons for rejection were improper."). As the VE's testimony
7    highlights, the upper extremity limitation is critical as it has a direct bearing on what light jobs, if
8    any, plaintiff would be able to perform.  For example, if plaintiff were limited to only occasional
9    reaching, the bakery position would apply.  In turn, if reaching were prohibited, there would be no
10   available positions.  The ALJ erred by not expressly providing any convincing reasons based on
11   substantial evidence (or even specific and legitimate reasons) for the rejection of the upper
12   extremity limitation set forth by Dr. Bleecker.[7]

13       Remand is therefore in order.  The Court directs the ALJ in the remand proceedings to
14   properly consider and weigh Dr. Bleecker's opinion with respect to the portion of his assessment
15   regarding the upper right extremity reaching limitation.  In the event the ALJ rejects Dr. Bleecker's
16   opinion, such rejection must be based on legally sufficient reasons.  If the ALJ determines that
17   substantial evidence supports Dr. Bleecker's finding that plaintiff's ability to reach is impaired, the

---

based on specific and legitimate reasons that are supported by substantial evidence in the record)(citing Nguyen v. Chater, 100 F.3d 1462, 1466 (9th Cir. 1996)).

[7]   According to the transcript of the August 7, 2001, hearing, the ALJ commented that the reaching limitation was first documented in Dr. Bleecker's September 14, 2000, report. [AR at 285.] It could be inferred from the ALJ's discussion that he may have considered the limitation to be immaterial because it did not manifest itself until after plaintiff turned 55 years of age on March 24, 2000.  The Court's review, however, is limited to the reasons actually cited by the ALJ in support of his determination. See Connett v. Barnhart, 340 F.3d 871 (9th Cir. 2003) ("It was error for the . . . court to affirm the ALJ's . . . decision based on evidence that the ALJ did not discuss."). In the decision, the ALJ did not articulate any basis explaining why Dr. Bleecker's assessment was rejected. In any event, in light of the earlier findings of reduced grip strength of plaintiff's dominant right hand (from 1995 and 1998), as well as indications that he had shoulder pain in 1996 [AR at 87, 90], and injured his neck and right shoulder at work in 1981 [AR at 157], it appears possible that plaintiff's difficulty with reaching, if any, developed prior to September 2000.  If the ALJ finds that substantial evidence supports the upper extremity limitation, he should further determine at what point in time plaintiff became affected by this condition.

ALJ should evaluate to what extent the impairment exists, and make appropriate findings with respect to available jobs.

Because the result of this determination may impact other steps in the analysis, plaintiff's remaining claims will not be addressed herein.

## VI.

## REMAND IS APPROPRIATE

As a general rule, remand is warranted where additional administrative proceedings could remedy defects in the Commissioner's decision. See Harman v. Apfel, 211 F. 3d 1172, 1179 (9th Cir.), cert. denied, 531 U.S. 1038 (2000); Kail v. Heckler, 722 F.2d 1496, 1497 (9th Cir. 1984). In this case, remand is appropriate for the ALJ to properly consider Dr. Bleecker's assessment that plaintiff's ability to reach with his upper right extremity is limited. The ALJ is instructed to take whatever further action is deemed appropriate and consistent with this decision.

Accordingly, **IT IS HEREBY ORDERED** that: (1) plaintiff's request for remand is **granted**; (2) the decision of the Commissioner is **reversed**; and (3) this action is **remanded** to defendant for further proceedings consistent with this Memorandum Opinion.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: May 3, 2006

/S/
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE